UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVID COMINS,                    :
        Plaintiff,               :
                                 :
v.                               :     Civil No. 3:05cv1193 (JBA)
                                 :
FLODESIGN, INC. et al.,          :
        Defendants.              :

<u>RULING DECLINING JURISDICTION</u>

Plaintiff David Comins ("Comins") initiated this action in Connecticut Superior Court against Dr. Michael Werle ("Werle"), Dr. Walter Presz ("Presz"), and Flodesign, Inc., a Massachusetts corporation.  The complaint stems from an alleged joint venture between the parties for the manufacture and marketing of certain propulsion technology.  Defendants timely removed the case to federal court in July 2005, <u>See</u> Notice of Removal [Doc. #1], and simultaneously filed an answer and counterclaims.  At a status conference, this Court questioned its subject matter jurisdiction and requested briefing on the issue.  Having considered the parties' submissions and applicable caselaw, the Court declines jurisdiction and <u>sua sponte</u> remands the case to state court.

I.   **Factual and Procedural Background**

Plaintiff's original complaint, filed in state court, asserted three breach-of-contract counts, one against each of the defendants.  <u>See</u> Notice of Removal, Ex. A.  Plaintiff asserted that he had "conceived a new technology idea designed to increase

thrust in watercraft propulsion," id. at ¶ 4, that he brought his idea to Drs. Werle and Presz, and the three of them created and tested a bench model of the idea, id. at ¶¶ 5-7.  Plaintiff asserted that the parties orally agreed "to form a business and locate manufacturers to build and implement applications of the new technology," and that he was to "use his best efforts, [sic] and resources to locate manufacturers...."  Id. at ¶¶ 10-11.  He alleged that Werle and Persz orally agreed to pay him "a fair commission on each of the new technology's manufactured applications," and that plaintiff found two interested manufacturers, one of which asked defendants to obtain a release of claim for compensation from plaintiff as a condition for commencing manufacturing.  Id. at ¶ 17.  Defendants then requested plaintiff "to sign a release of claims for all future applications of new technology" and offered plaintiff a 5% commission on the "first applications of the new technology." Id. ¶¶ 21-22.

Defendants removed the case to federal court on the basis that they were "concerned that Plaintiff might amend his Complaint to seek a correction [of inventorship]" under federal patent law.  Notice of Removal ¶ 5.  They counterclaimed seeking a declaratory judgment that plaintiff was not a co-inventor of any of six listed patents, and asserted that plaintiff's actions constituted false and misleading statements under the Lanham Act.

2

Answer and Counterclaims [Doc. #6].

After a conference with the Court during which defendants expressed their intent to file a motion to dismiss the complaint, plaintiff was given an opportunity to amend his complaint, and he filed a Substituted Amended Complaint [Doc. # 32].  This complaint is not organized into separate claims, but from the additional facts asserted in the Substituted Amended Complaint, it can be discerned that he asserts claims for theft of trade secrets, violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), tortious interference with business expectancy, conspiracy, fraud, and breach of fiduciary duty, in addition to breach of contract.

Defendants moved to dismiss and/or strike the complaint on three grounds: that plaintiff's complaint failed to separately enumerate his legal claims; that plaintiff failed to plead fraud with specificity as required under Rule 9, and that some or all of plaintiff's factual allegations fell outside the three-year statute of limitations.  In response, plaintiff again moved to amend his complaint, <u>see</u> [Doc. # 48] and opposed the motion to dismiss on the ground that the Second Substituted Amended Complaint adequately addressed defendants' objections, <u>see</u> [Doc. # 49].

In the Second Substituted Amended Complaint plaintiff asserts only four claims: breach of contract, breach of fiduciary

duty, violation of CUTPA, and fraud.  The factual allegations, however, are essentially the same as the original state court complaint.  He claims that he "conceived of a new technology" and that defendants agreed to pay him a fair commission for "his time, ideas and efforts...."  Proposed Second Substituted Amended Complaint [Doc. # 48] ¶¶ 5, 11.  As in the prior complaint, he alleges that he found two interested manufacturing companies, that he attempted to arrange with defendants a rate of compensation "for his work in this joint venture," id. at ¶ 15, that defendants offered him a commission of 5-25% on the first applications but no rights in the later applications of the technology, id. at ¶¶ 16-17, and that he refused this offer, believing it to be a breach of their previous agreement that he should get "a fair share of the profits [in] proportion to his interest in the joint venture," id. ¶ 18.

Plaintiff argues that, based on the facts and claims asserted in his case, federal subject matter jurisdiction does not exist, and the case should be remanded to state court. Defendants argue that they properly removed the case pursuant to the Court's original jurisdiction over patent matters, 28 U.S.C. § 1338, because any decision concerning plaintiff's entitlement to damages from defendants requires deciding whether plaintiff "owns the technology" at issue, which in turn "depends on resolution of a substantial question of federal patent law...."

4

Def. Supplemental Mem. Supporting Subject Matter Jurisdiction
[Doc. # 30] at 3.

## II.  Standard

"Whenever it appears by suggestion of the parties or
otherwise that the court lacks jurisdiction of the subject
matter, the court shall dismiss the action."  Fed. R. Civ. P.
12(h)(3).  Pursuant to 28 U.S.C. § 1441, "any civil action
brought in a State court of which the district courts of the
United States have original jurisdiction, may be removed by the
defendant or the defendants, to the district court of the United
States for the district and division embracing the place where
such action is pending."  In the absence of diversity of
citizenship,[1] the district court has original jurisdiction only
if the case "arises under" federal law, pursuant to 28 U.S.C. §
1331.  <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987).
The burden of establishing the existence of federal subject
matter jurisdiction rests on the removing party. <u>United Mutual
Houses, L.P. v. Andujar</u>, 230 F. Supp. 2d 349 (S.D.N.Y. 2002)
(citing <u>Caterpillar</u>, 482 U.S. at 391-92).

## III. Discussion

"The presence or absence of federal-question jurisdiction
[under § 1331] is governed by the 'well-pleaded complaint rule,'

---

[1] Diversity of citizenship does not exist in this case, as
both plaintiff Comins and defendant Werle reside in Connecticut.
Am. Compl. ¶¶ 1-2.

which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Caterpillar</u>, 482 U.S. at 392.  Thus "[t]he 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts." <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63 (1987).  This rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." <u>Id.</u>

In <u>Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.</u>, 535 U.S. 826, 830-32 (2002), the Supreme Court addressed the well-pleaded complaint rule in the context of patent jurisdiction, holding that a patent law counterclaim was insufficient to create "arising under" jurisdiction.  For § 1331 jurisdiction to exist, the "plaintiff's well-pleaded complaint must establish either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law." <u>Id.</u> at 830 (citations and quotations omitted).  Vornado had lodged a complaint with the United States International Trade Commissioner against Holmes, asserting that Holmes infringed its patent and trade dress.  Holmes then sued Vornado in federal court seeking a declaratory judgment that its products did not infringe defendant's trade dress.  Vornado asserted a

counterclaim alleging patent infringement.  Id. at 828.  The
Supreme Court held that because Holmes' "well-pleaded complaint
did not assert any claim arising under federal patent law," as it
only contained the trade dress claim, the Federal Circuit had
erred in asserting jurisdiction over the appeal.  Id. at 830.
The Supreme Court also confirmed that the Federal Circuit's
appellate jurisdiction over patent matters is co-extensive with
the district courts' original patent jurisdiction.  Id. at 829;
see also 28 U.S.C. §§ 1295(a)(1), 1338(a).

        The Federal Circuit carved out an exception to Holmes in
Golan v. Pingel Enterprise, Inc., 310 F.3d 1360, 1366-67 (Fed.
Cir. 2002), holding that where a plaintiff brings an action for
declaratory judgment of patent non-infringement, jurisdiction
exists because "the plaintiff's complaint arises under federal
law if the cause of action that the declaratory defendant
threatens to assert arises (or would arise) under federal law."
Defendants in this case argue that because they are seeking a
declaratory judgment to correct inventorship, Golan directly
governs.  Their reading of the Federal Circuit's opinion is
overbroad, however.  Golan did not hold that any declaratory
judgment counterclaim raising a patent issue automatically
confers patent jurisdiction.  Rather, it held that "[i]n the
context of a complaint seeking a declaration of noninfringement,
the action threatened by the declaratory defendant... would be an

action for patent infringement [and such] action clearly arises under the patent laws." Id. at 1367 (emphasis supplied).  In this case, Plaintiff Comins has not sought a declaratory judgment (or any other type of relief) relating to the patents enumerated by defendants' counterclaim, nor has he sought any correction of inventorship.

The question then becomes whether, nonetheless, Comins' "well-pleaded" complaint necessarily involves a substantial issue of federal patent law.  Defendants argue that it does, because any determination that plaintiff is owed compensation requires a determination of who owns the technology, which in turn requires determining the correct inventorship of the six patents listed in the counterclaim.

The Supreme Court "sets a lenient standard for" determining the scope of patent law preemption under 28 U.S.C. § 1338(a). U.S. Valves, Inc. v. Dray, 212 F.3d 1368, 1372 (2000) (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, (1988)).  Federal patent law clearly preempts any state law concerning inventorship.  Univ. of Colorado Found. v. Am. Cyanamid Co., 196 F.3d 1366 (Fed. Cir. 1999).  For instance, the plaintiffs in Cyanamid, two doctors and their university research foundation, sued a vitamin manufacturer for fraudulent nondisclosure, patent infringement and copyright infringement, alleging that the doctors had invented a particular vitamin

8

formulation, and that the manufacturer intentionally omitted them
as co-inventors on the patent application and intentionally hid
the patent from them.  Id. at 1369.  The Federal Circuit held
that "the University's fraudulent nondisclosure and unjust
enrichment claims depend on the Doctors' status as inventors,"
and "whether [defendant] had a duty to disclose its intention to
and filing of the Patent application depends on who was the
inventor of the" vitamin.  Id. at 1372 (internal quotation and
citation omitted).  Because the "Patent Act leaves no room for
states to supplement the national standard for inventorship," the
district court should have applied federal patent law, rather
than state law, to determine the identity of the correct
inventor.  Id.

By contrast, determination of Comins' claim for compensation
for his efforts to bring the technology to market does not turn
on whether he is an inventor of the six patents listed in
defendants' counterclaim.  While plaintiff does allege in his
complaint that he conceived of the technology at issue, the
relief he seeks is compensation for his time and effort in
obtaining a manufacturer to utilize that technology.  He alleges
that he formed a joint venture with defendants for purposes of
developing the technology, and that defendants owed him fair
compensation for any manufacturing agreements he procured.
Whether the partners breached a contract and/or a fiduciary duty

by not paying him a certain commission under their oral agreement, as alleged by plaintiff, does not turn on whether plaintiff was an inventor under patent law or merely a business partner.  Defendants' argument to the contrary confuses ownership with inventorship.  Plaintiff may be owed compensation for his efforts in developing and/or promoting the technology at issue regardless of whether he is the "inventor" of the technology as defined by patent law.  The merits of plaintiff's claim for payment for his work do not depend directly on the inventorship of the patent.

Similarly, Comins' allegation that defendants "obtained plaintiff's assistance in the development of the new technology and its marketing," and encouraged him to reveal "the details of the new technology the joint venture developed," Am. Compl. ¶ 18, 20, while intending all along to refuse Comins his promised payment, does not turn on the inventorship of the ideas but rather on defendants' intentions with regard to their business and marketing strategy and simultaneous representations to Comins.

While defendants apparently intend to argue that they are the sole inventors of the patented technology, and therefore they do not owe plaintiff any money for assistance in developing that technology, and that plaintiff misrepresented ownership of the technology defendants claim is theirs, their defenses to

10

plaintiff's claim do not dictate what must be contained in plaintiff's well-pleaded complaint.  Likewise, defendants' request for a declaratory judgment of correct inventorship is not necessary to resolution of plaintiff's well-pleaded complaint, even though defendants could have brought their claim as plaintiffs in federal court invoking federal patent jurisdiction. "[T]he presence of a federal question... in a <u>defensive</u> argument does not overcome the paramount policies embodied in the well-pleaded complaint rule--that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." <u>Caterpillar</u>, 482 U.S. at 398-99 (emphasis supplied).

The same reasoning applies to defendants' Lanham Act counterclaim.  Although, as defendants argue, many of the <u>facts</u> supporting this claim (<u>i.e.</u>, that plaintiff approached potential customers to market the technology that plaintiff claims belongs to him) are pleaded in plaintiff's complaint, the Lanham Act <u>claim</u> does not appear on the fact of plaintiff's well-pleaded complaint.  While defendants argue that plaintiff "has not objected to the Court's federal jurisdiction" for the Lanham Act claim, Def. Sur-Reply [Doc. # 44] at 2, federal subject matter jurisdiction cannot be created by parties' consent. <u>Arbaugh v. Y&H Corp.</u>, __ U.S. __, 126 S.Ct. 1235, 1244 (2006)

("[S]ubject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived.") (quoting <u>United States v. Cotton</u>, 535 U.S. 625, 630, (2002)). Therefore federal jurisdiction does not exist on the basis of defendants' second counterclaim.

## IV.  Conclusion

Accordingly, the Court declines subject matter jurisdiction over this case, and directs the Clerk to remand it to the Connecticut Superior Court for the Judicial District of Hartford.

IT IS SO ORDERED.

/s/

_____
JANET BOND ARTERTON
United States District Judge

**Dated at New Haven, Connecticut, this 14th day of August, 2006.**

12